## APPEAL OF J. F. PETERY ET AL

[SCHUYLKILL Co. v. J. F. PETERY ET AL.]

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF SCHUYLKILL COUNTY, IN EQUITY.

Argued February 13, 1889—Decided November 11, 1889.
[To be reported.]

(a) Land, which had been purchased for the county at a treasurer's sale for taxes, was afterward sold by the county at public sale to Petery, who, before the receipt of his deed from the county, contracted to sell one half interest in the land to Boyer, who was one of the county commissioners when it was sold.

1. A bill in equity being subsequently filed by the county to set aside the sale of the land, on the averment that the former county commissioner was interested in the purchase, the commissioners in office were the proper parties to file the bill, and the court had jurisdiction in equity of the cause of action.

2. But, the master and court below having found that at the time of his purchase Petery was a good faith purchaser, having then no contract or arrangement with Boyer with regard to the land, but buying solely for himself, it was error to decree that the sale to Petery was void and that his deed should be surrendered for cancellation.

3. The questions, whether the purchase by Boyer, while county commissioner, of the one half interest in the land from Petery, was a fraud in law, and whether the county could require Boyer to account to it for his profits or to turn over his title to the land in controversy, upon a proper bill filed for that purpose, not decided.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS and McCOLLUM, JJ.

No. 338 January Term 1887, Sup. Ct.; court below, No. 3 September Term 1885, C. P. in Equity.

On July 20, 1885, a bill in equity was filed in the name of the county of Schuylkill against Jacob F. Petery and Daniel Boyer, which in substance averred :

That on June 10, 1878, the treasurer of Schuylkill county sold to the commissioners of said county, at a public tax sale, for the unpaid county tax of 1876, a tract of land in East Union township, assessed and sold as " John Hare Powell, 88 acres, warrantee C. North," and subsequently duly executed and delivered to said commissioners his deed for it. That the commissioners held this title more than five years, and then, on March 22, 1884, sold the same to Jacob F. Petery, one of the defendants, for $2.50, and on April 9, 1884, executed and delivered their deed to him. That at the time of this sale and conveyance Daniel Boyer, the other defendant, was one of the commissioners. That complainants were informed and believed that prior to and at the time of the commissioners' sale, said Boyer had a contract and arrangement with Petery whereby he should become an owner in whole or in part of said tract. That from the date of that sale Boyer had asserted that Petery's purchase was wholly or in part in his interest. That the purchase was made by and the deed made to Petery, to cover up the illegality of a purchase by Boyer himself at a sale which, as a county commissioner, he was holding. That the amount due to the county on the day of the treasurer's sale was $48.40. That this tract was claimed by the Lehigh & Wilkes-Barre Coal Co. under a title going back to the original grant from

the commonwealth. That on December 1, 1884, Petery executed a deed to Boyer for an undivided one half interest in this tract for a nominal consideration of $25, but long prior to this conveyance, and within two weeks of Petery's purchase, Boyer had asserted his ownership of the whole or a part of the title purchased by Petery. That on February 2, 1885, to No. 180 March Term 1885, said Boyer and Petery instituted an action of ejectment against the Lehigh & Wilkes-Barre Coal Co. for this tract:—Praying that by reason of the illegality of the arrangement or contract between the defendants, whereby Boyer attempted to acquire a title to land sold by himself as a county commissioner, the sale be declared null and void and set aside, and the said Petery and Boyer be required to deliver up the commissioners' deed to Petery for cancellation.

The answer of the defendant, Petery, filed September 7, 1885, protesting that nothing in the bill entitled the present board of commissioners to interfere or impeach the title of the defendants, admitted that Boyer was one of the three county commissioners at the time of said commissioners' sale, but denied, in the language of the bill, that there was, either prior to or at the time of the sale, any contract or arrangement whereby Boyer was to become an owner of the title which Petery purchased, either in whole or in part; denied, also, that there was any arrangement whatever between them, and alleged that at the time of the sale Boyer was in no way interested in the purchase.

The answer of Boyer denied that he asserted or admitted, as stated in the bill, that Petery's purchase was in his interest, and that it was so made and the deed executed to Petery to cover up the illegality of his purchase; admitted the execution of the deed from Petery to him for the undivided one half, as stated in the bill, but denied the assertion, attributed to him, as to ownership prior to this deed, or that he had made any assertions or admissions inconsistent with the honesty of the sale to Petery; admitted the bringing of the ejectment suit, but denied that the county was in any way interested or concerned in the matter, or that the present county commissioners had legal or equitable status in the premises.

The cause having been put at issue, *Mr. Mason Weidman,*

was appointed examiner and master, and on December 8, 1886, reported as follows:

The undisputed facts are that the treasurer of Schuylkill county, on June 10, 1878, sold to the county commissioners, at a public tax sale, for the unpaid county tax of 1876, the Caleb North tract of 88 acres assessed in the name of John Hare Powell, as unseated, in East Union township, and duly delivered the deed; that, having held the title for more than five years, the commissioners, on March 22, 1884, sold the same at public sale, and it was knocked down to Jacob F. Petery, one of the defendants, he being the highest bidder, for $2.50, that being the highest price bidden for the same, and delivered the deed to Daniel Boyer, made out in the name of Petery, on April 9, 1884; that Daniel Boyer was one of the three county commissioners who, in the name of the county, held the sale and made the deed; that the amount due to the county upon this tract on the day of the commissioners' sale was $48.40; that the tract is claimed by the Lehigh & Wilkes-Barre Coal Co., under a title going back to the original grant from the commonwealth; that Petery, by deed dated December 1, 1874, executed a deed by which he conveyed to Boyer one undivided half of the tract; that the consideration named in this deed was $25, whereas the amount paid by Boyer was the one half of the bid $2.50, and for the deed $2.00, i. e. $3.25. That Petery and Boyer, upon this title, have brought an action of ejectment against the Lehigh & Wilkes-Barre Coal Co. for the possession of the land.

It is alleged by the complainant that prior to said sale by the commissioners, and at that time, the defendants had a contract and arrangement between them whereby it was understood that Petery was to purchase this tract of land and others at this sale, and that Boyer, the commissioner, was to share in the titles, profits and costs; that Boyer from the day of Petery's purchase at the sale, has asserted that he had an interest in this tract; that they arranged between them that the purchase and the deed should be in Petery's name so as to cover up the illegality of Boyer's purchase at a sale which, as a county commissioner, he was helping to conduct. On the ground of the illegality of this contract or understanding, the court is asked to annul and set aside the sale to Petery as fraudulent in law or

fact, and to direct the deed of the county commissioners to him to be delivered up for cancellation.

The answer of the defendants denies these allegations in the language in which they are made; denies that there was any arrangement or contract whatsoever between the defendants prior to or at the time of the sale, or that Boyer either admitted or asserted that Petery's purchase was in his interest; or that the purchase and deed were made to Petery to cover the illegality of a purchase by him; or that Boyer ever made any admission inconsistent with the honesty of the sale by the commissioners to Petery. The defendants also deny that the county of Schuylkill has any interest in this suit, or that the present county commissioners have any status, legal or equitable, to maintain this bill. They claim also, as matter of law, that this bill is a mere ejectment bill, and should not be sustained.

The questions raised at the argument upon the bill and answer are:

1. Assuming the facts to be proved, as stated in the bill, is the remedy at law adequate, and should the bill be dismissed as an ejectment bill?

2. Have the present commissioners, or those who filed this bill, sufficient interest to maintain the suit?

3. Was the purchase by Boyer fraudulent in law or in fact?

1. Is the remedy at law adequate?

The master has been referred to every authority in the digest which asserts the doctrine that a bill in equity will not be sustained where the remedy at law is adequate. As this is an elementary principle, growing out of the definition of equity, none of these cases need be particularly referred to.

—Discussing elaborately, however, the following: Meck's App., 97 Pa. 313; Richard's App., 100 Pa. 51; Long's App., 92 Pa. 171; Messimer's App., 92 Pa. 169; Gloninger v. Hazard, 42 Pa. 389; North Penn. Coal Co. v. Snowden, 42 Pa. 488; Kennedy's App., 81* Pa. 163; Barclay's App., 93 Pa. 50; Dohnert's App., 64 Pa. 311; § 13, act of June 16, 1836, P. L. 789; § 39, act of June 13, 1840, P. L. 671; § 1, act of February 14, 1857, P. L. 39; Ressler v. Witmer, 1 Pears. 174; Gandolfo v. Hood, 1 Pears. 269; 1 Story, Eq. J., 11th ed., §§ 695, 699, 700; Brightly's Equity, § 119; Fowler's App., 87 Pa. 449, the master proceeded:

There is no difficulty in reconciling these authorities. From those last cited it is plain, and I do not understand that it is disputed, that our courts, under the statutes, have a clear right, in case of fraud, either actual or constructive, to require the surrender of a deed and to decree its cancellation. The cases cited by the defendant only limit this right to the extent that where there is an adequate remedy at law, by ejectment or otherwise, the chancellor will dismiss the bill. But this doctrine does not bind the chancellor absolutely, and he may permit the bill to proceed, even when there is an adequate remedy at law: Ressler v. Witmer, 1 Pears. 174.

The county of Schuylkill has never had possession of this land. Its only claim upon it is a deed from the county treasurer. That title and the evidence of it they have handed over to the defendants. It is charged in the bill that the defendants procured this to be done by a fraud both actual and constructive, and the bill seeks to bring that fraud to the knowledge of the court for the purpose of destroying its effect. The only demands of the bill are that this fraud may be investigated, and, if found to exist, that the deed may be delivered up for cancellation. Has the county a legal remedy adequate for its purpose in this case?

Ejectment was the only remedy suggested. But ejectment lies only against the party in possession; and Boyer and Petery are not in possession, and by their ejectment suit against the Lehigh & Wilkes-Barre Coal Co. have admitted this fact. Nor can the county sue this company for possession, because it has parted with evidences of title, and to such an action this would be a sufficient answer.

Besides this, it is not contemplated by our statutes that the commissioners should hold lands purchased at treasurer's sales or involve the county in litigation to obtain possession. The law directs them to sell their title whatever it may be. In trying to perform this duty their allegation is that a fraud has been perpetrated by one of their number, who with them had the sale in charge. If this allegation is proven, what is the proper and adequate redress? An action for possession? Defendants are not in possession. An action for damages? An action for damages would condone the act which the fraud vitiates, because the act must be approved as the basis of the

### Master's Report.

demand for damages. The fraud, actual or constructive, poisons the sale and renders it void or voidable. If the poison is found, the sale must be annulled; if it is not found, the sale must stand. This is the whole scope of the bill and of the remedy demanded. If an act is in violation of the public policy, or a matter of principle, it ought not to stand simply because the parties who benefit by it are willing to pay damages, unless the parties whose rights are affected by it are content with that satisfaction. It certainly ought not to be the privilege of the offenders to refuse any other remedy.

It has been argued that the objection to jurisdiction not having been made until after answer filed, comes too late. As the master has decided that this court has jurisdiction, it is unnecessary to consider the authorities cited on this point: Bank of Kentucky v. Bank, 1 Pars. 180; Wiser's App., 9 W. N. 508.

2. Had the commissioners of the county who instituted this suit sufficient interest, or a legal or equitable status, to maintain it?

I suppose that it is not contended that the fact that the board had changed between the making of this sale and the deed, and the bringing of this suit, made any difference. If there was actual fraud there would be no doubt of the status of the county commissioners. If the acts complained of constitute only constructive fraud, the right of the county commissioners, as cestuis qui trust in reference to the sale and its avoidance, will be more appropriately considered under the next question. The present inquiry is whether the commissioners have sufficiently authorized and are sufficiently pursuing this suit?

\* \* \* \* \* \* \* \*

It is now decided that it has sufficiently authorized this suit.

3. Was the purchase by Boyer such a fraud in law or fact as to render the sale void or voidable?

If there was actual fraud, or fraud in fact, it is not denied that the sale should be set aside. If there was no fraud in fact, or if the proof is insufficient, was there fraud in law, constructive fraud? If so, who has the right to complain? And what redress does the law afford?

Every judge and modern writer has accepted the principle that transactions in which the same person is both buyer and seller are to be jealously and searchingly examined. Some

judges have thought that it would have been the wiser and better course never to have confirmed such a sale in any case. The rule is that no man shall be both buyer and seller; and from the earliest times, without any change in the principle, there has been a determination on the part of the courts to maintain it; so that there are very few, if any, exceptions to its application, the exceptions being rather cases which upon the facts are not within the principle of the rule.

—Considering at length the following citations: Davoue v. Fanning, 2 Johns. Ch. 252; 1 Story Eq. J., §§ 258-9, 307-8, 316; Brightly's Eq., §§ 90, 98, 100, 101; Lazarus v. Bryson, 3 Binn. 54; Moody v. Vandyke, 4 Binn. 43; Campbell v. Penn. L. Ins. Co., 2 Wh. 63; Fisk v. Sarber, 6 W. & S. 18; Webb v. Dietrich, 7 W. & S. 402; Painter v. Henderson, 7 Pa. 48; Pennock's App., 14 Pa. 446; Myers' App., 2 Pa. 465; Fox v. Cash, 11 Pa. 207; Cuttle v. Brockway, 24 Pa. 147; s. c. 32 Pa. 45; Hallman's Est., 13 Phila. 562; Eichelberger v. Barnitz, 1 Y. 307; Beeson v. Beeson, 9 Pa. 285; Bruch v. Lantz, 2 R. 417; Chronister v. Bushey, 7 W. & S. 153; Campbell v. McLain, 51 Pa. 200; Peters v. Heasley, 10 W. 211, the master proceeded:

From these cases I infer the rule to be, that where the fact is admitted, or the proofs show, that a third person was interposed as a purchaser for the benefit of the trustee, the purchase is of the same defeasible nature and quality as if the purchase had been made directly by the trustee, and may be avoided as of course and at the option of the cestui que trust. If, however, the agency of the third party is disputed by the trustee, that fact must be proved and found as a conclusion warranted by the evidence: Eichelberger v. Barnitz, 1 Y. 307; Lazarus v. Bryson, 3 Binn. 54; Moody v. Vandyke, 4 Binn. 31; Bruch v. Lantz, 2 R. 417; Chronister v. Bushey, 7 W. & S. 153; Webb v. Dietrich, 7 W. & S. 401.

No witness examined before the master testifies directly to any knowledge of an agreement or arrangement between these defendants, before this sale, to buy any particular tract, or to buy at all. Both of the defendants positively swear that there was no such arrangement. The master is asked to infer that there was, from the following facts and theories:

Boyer and Petery admit having had a conversation before the

Master's Report.

sale about the lands offered, and as to whether there would be anything worth buying. They both say that Boyer said that he didn't know, that he had not had time to look them up. Boyer asked the treasurer, if Petery's bids ran up so high that the money he had with him would not pay for them, to indulge him and that he would see the treasurer paid or would pay them himself. The treasurer's clerk could not say which way he made the promise. That Petery only made two bids, both on the second day, and then only $2.50 and 50 cents; that they were relatives, connected by marriage; that before the deed was made they had agreed upon a division of the property by dividing the expense of the purchase; that for this small sum Petery sold what he believed to be valuable property; that though the bargain was made before the deed was delivered, and Boyer paid to the county the price of the deed, yet the name of the grantee in the deed only showed that Petery was the purchaser, and this was done because Boyer knew, as he testified he did, that a commissioner had no right to buy at this sale; that though the bargain was made between March 22 and April 9, 1884, no deed was executed or delivered until December of that year; that in that deed the consideration was stated to be $25, when in fact it was only $4; that all the writings differ from the truth, and that the motive for this was concealment; that whilst they both swear that a week or more elapsed after the sale, before Boyer acquired any interest, Kimber C. Wilson swears that Boyer was looking up the title two days after the sale; that Boyer, Petery and Reber contradict each other as to when the request to the treasurer for indulgence to Petery was made;—it is argued that this testimony shows that there was a secret agreement between the defendants, and that this fact, in connection with the inadequate price, are grounds for setting this sale aside.

No authority has been shown to the master holding or arguing that inadequacy of price is a ground for disturbing a commissioners' sale. There are good reasons for the belief that it will never be recognized as a ground for so doing.

I am unable to see in these facts the proof that there was an agreement or conspiracy between the defendants, which existed before or at the time of the sale. There is no direct testimony that there was such an agreement. There is testimony in posi-

tive denial by both defendants, that there was not. Nor can I infer this from the other facts which are relied upon by the complainant. The conversation before the sale, so far as this testimony shows, only proves that Petery was interested in making an advantageous purchase, and that Boyer gave him no information or aid. Boyer did secure a privilege for him as a bidder, and he was the only person for whom he did secure that privilege ; but the treasurer's clerk, whose testimony shows it, also swears, that quite a number of other persons had the same privilege accorded to them by other officers connected with the sale. Mr. Wilson's testimony does not pretend to prove a knowledge of any arrangement before the sale ; he testifies that Boyer was claiming an interest soon, a few days after the sale. But as Wilson is not positive as to the time, and as both Petery and Boyer admit that the purchase of Boyer was between March 22d and April 9th, not much seems to be inferable from this fact.

The master is unable to find in this testimony proof that there was such an arrangement. Both defendants swear that there was not ; nobody swears that there was. It would be unfair to find actual fraud in the face of this positive denial, from facts which are not inconsistent with innocence.

The property was " knocked down " to Petery on March 22, 1884. Very shortly after that, and before the deed was paid for or executed, he bargained with Boyer, who was still a county commissioner, and agreed to take him in as a partner on paying one half of the bid and expenses. Petery had then paid his bid, but had not paid for the deed. On strength of this bargain, Boyer paid his own money for the commissioners' deed to Petery, directed it to be made out, and received the deed. In December following, Petery made a deed to Boyer for an undivided one half of this tract, in pursuance of the bargain admittedly made before Petery had received his deed.

When the defendants made that bargain, Boyer was a county commissioner. His duties as such in reference to this sale were not ended. The deed had not been executed or delivered. He afterwards joined in its execution. In other words, the title was still in the county and remained there until Boyer, by reason of his bargain, paid for the deed, and then as a public officer and trustee joined in its execution. The property had

been struck down to Petery, as the highest bidder at a public sale, and he had signed an acknowledgment and contract as purchaser. It may be the fact that the duties that were still to be done by Boyer as commissioner in reference to the sale, were merely formal and unimportant, and not of such a character that they could have aided Petery to any peculiar advantage. This may or may not be so. In the eye of the law this inquiry is unnecessary, and to make it would be to recognize exceptions to the rule, which have not been countenanced by our courts. The courts in these cases do not guess or inquire whether the trustee was or could have been of service in getting some advantage.

In Fisk v. Sarber, 6 W. & S. 18, the assignee for the benefit of creditors was permitted to buy at a sheriff's sale on a mortgage adversely held, and which he had not the means to pay out of the assignor's estate, because the court thought that it was not his sale, and that under the circumstances of that case, he had no duty to perform whatever, as such assignee, in reference to the sale. In Cuttle v. Brockway, 32 Pa. 45, a commissioner was allowed to buy at a treasurer's sale for more than the tax and costs. But that was a treasurer's sale, not a commissioners', and the ground on which the right to buy was made to rest was, that a bid greater than tax and costs by the commissioner would have been, not only a part of his duty, but not a violation of law: See also Bartholemew v. Leech, 7 W. 472.

Until the relation of trust is entirely ended and no more care or duties required from the trustee, he cannot acquire anything but a defeasible title; and that no wrong has been proved does not prevent the application of the rule. Now, if the commissioners' deed had been drawn and delivered in accordance with the facts, as they are admitted to have been when the deed was delivered, the deed would have been to Boyer and Petery, and not to Petery alone. It was not so drawn; but the testimony shows that that was the fact; and that fact, under the decisions of our court, it seems to me, brings this case within the reason of the rule and renders it a constructive fraud, voidable as of course at the option of the cestui que trust, the county of Schuylkill, whose trustee Boyer was; and this follows whether any wrong was done or not and whether Boyer or

Petery gained undue advantage or not. The county's demand that the sale shall not stand, is sufficient reason for setting it aside. Nor does it help the case any that Petery at the time of his bid had no relation of trust which would prevent his acquiring title. He is charged with a knowledge of the law; and, having entered into a contract which brought his rights under the condemnation of the policy of the law, he must suffer the loss.

If it be true that the county, upon its own motion had a right to disaffirm this sale, the costs of this suit must also fall upon the defendants, viz.: . . . . .

—The master, therefore, recommended a decree that the sale of the land, known as the John Hare Powell tract, by the commissioners of Schuylkill county to Jacob F. Petery, on March 20, 1884, be declared null and void and set aside, and that said Jacob F. Petery and Daniel Boyer, defendants, be decreed and directed to deliver to the court for cancellation the deed made therefor, and that the defendants pay the costs of the proceeding.

On March 7, 1887, various exceptions to the foregoing report filed by the defendants, having been argued, the court, GREEN, J., without opinion filed, dismissed them and confirmed the report, entering the decree recommended by the master. Thereupon the defendants took this appeal, specifying that the court erred:

1. In not dismissing the bill, because the county was not a party to it, the name of the county having been used without proper authority, and only to subserve the purposes of the Lehigh & Wilkes-Barre Coal Co., which company is the actual party.

2. In not dismissing the bill for want of jurisdiction, there being ample remedy at law.

3. In not dismissing the bill, because the allegations therein contained were wholly unsupported by the evidence.

4. In not dismissing the bill, because, the allegations therein contained being denied in respondents' answer, the answer was conclusive and was not overcome by competent proofs.

5. In not dismissing complainants' bill for want of equity.

6. In not dismissing the bill, because the complainants had

Arguments.

not refunded, or offered to refund, the purchase money paid them by Petery, prior to the institution of this suit.

7. In confirming the master's report.

Mr. A. W. Schalck (with him Mr. John W. Ryon and Mr. James Ryon), for the appellants :

1. Is the county really the complainant in this case? And was this suit duly authorized? All business that requires care, deliberation and judgment, must be transacted at a regular meeting of the board of commissioners, and the minutes should show it: Sections 19, 20, 21, act of April 15, 1834, P. L. 541; Pike Co. v. Rowland, 94 Pa. 246. There is nothing on the minutes or records of the commissioner's office to show any authority for the litigation. Only one of the commissioners signed the bill, or authorized the suit. Moreover, it is clearly shown that at best the county is but a nominal party, and that its name is used as a mere cover for the Lehigh & W. Coal Co.

2. Even if the county could be considered a bona fide plaintiff, we submit that this is an ejectment bill. The allegation of fraud is a mere cover. The evident purpose is to enable the Lehigh & W. Coal Co. to redeem from this tax sale, and then successfully defend in the action of ejectment brought against them. The subject of ejectment bills has been discussed in a number of recent cases: Fox's App., 99 Pa. 385; Meck's App., 97 Pa. 316; Frisbee's App., 88 Pa. 144; Messimer's App., 92 Pa. 168; Long's App., 92 Pa. 171; Richard's App., 100 Pa. 51; Triscuit's App., 13 W. N. 57.

3. The bill should have been dismissed for want of the requisite proofs. The answer of each defendant denied the averments of the bill in the very words in which they were made; and it is horn-book law that such an answer is conclusive, and the bill must be dismissed, unless the answer be overcome by the testimony of two disinterested witnesses, or one disinterested witness and corroborative circumstances; and that the bill charges fraud does not change the rule: Brawdy v. Brawdy, 7 Pa. 159; Eberly v. Groff, 21 Pa. 251; Audenreid's App., 89 Pa. 120; Campbell v. Patterson, 95 Pa. 453; Nulton's App., 103 Pa. 286; Lance v. Coal Co., 16 Phila. 38; Lynch's App., 97 Pa. 353; Hartley's App., 103 Pa. 23; Light's App., 24 Pa. 180.

4. The master having found that there was no collusion between Boyer and Petery, the breach of trust of Boyer, if any there was, cannot be visited upon Petery. The master has undertaken to punish Petery and to rob him of his whole land, not for any wrong attributed to him, but simply because Boyer, who was only a half owner under Petery, was supposed to have violated some rule of public policy. This was clearly error: Kunes v. McCloskey, 115 Pa. 461; Morio's App., 4 Penny. 403; Price v. Barrington, 3 McN. & G. 486; Wilde v. Gibson, 1 H. of L. 605.

5. Finally, we submit that the complainants are not entitled to a decree, because they have not refunded, or offered to refund, the purchase money paid by Petery. True, where actual fraud is proven it is not necessary to refund the money; but in cases of constructive fraud, as for example between trustee and cestui que trust, the party seeking to set aside a sale on that ground must first pay back or tender to the purchaser what he has paid for the title: Gilbert v. Hoffman, 2 W. 66; Cleavinger v. Reimar, 3 W. & S. 486; McCaskey v. Graff, 23 Pa. 321; Nulton's App., 103 Pa. 297.

*Mr. F. G. Farquhar* and *M. George R. Kaercher* (with them *Mr. D. C. Henning* and *Mr. W. J. Whitehouse*), for the appellee:

1. The finding of the master in this case in favor of the plaintiff, approved by the court below, based upon the conclusion that Petery and Boyer were guilty of a fraud in law, is a complete answer, both in law and in fact, to the questions raised by the appeal which is presented here by the defendants in the equity proceeding in the court below. But, if this were not so, the prayer of the county for equitable relief in the premises must be sustained, on the ground that, under the evidence produced before the master, the purchase by Boyer and Petery of the tax title in question was fraudulent in point of fact as well as in law.

2. All the cases cited in defendants' paper book in support of the proposition that this is an ejectment bill, will be found to be proceedings in equity by parties out of possession of real estate against parties in possession, and as neither of the parties to this bill are in possession of the C. North tract, the principle of those cases cannot apply. There must be such a state

of facts as would support ejectment existing between the parties to a bill, before a bill be dismissed as an ejectment bill.

3. When the county accepted Petery's bid at the auction and he signed the conditions of sale, there came into existence an executory contract between the county and Petery for the sale and purchase of this title; a contract executory as to both parties to it, each having something to do before the contract became an executed one; and between the auction and the delivery of the deed, no property passed in law or equity. Whilst this executory contract existed, Boyer stepped in and became a party to it, in violation of the statute prohibiting county commissioners from "being concerned in any contract . . . . . made or undertaken under the authority of the county commissioners:" Section 43, act of April 15, 1834, P. L. 540.

4. Where once a fraud has been committed, not only is the person who committed the fraud, precluded from deriving any benefit from it, but every innocent person is so likewise, unless he has innocently acquired a subsequent interest; for a third person by seeking to derive any benefit under such a transaction, or to retain any benefit resulting therefrom, becomes particeps criminis, however innocent of the fraud in the beginning: Perry on Trusts, § 172; Rosenberger's App., 26 Pa. 67; Paul v. Squibb, 12 Pa. 296; Dyer v. Shurtleff, 112 Mass. 165; Terwilliger v. Brown, 44 N. Y. 237; Cumberland Coal Co. v. Sherman, 30 Barb. 553.

5. The sixth assignment of error relates to a matter that was not brought to the attention either of the master or the court below, by any exception; and, if the rule the defendants ask to have applied to plaintiff be correct, then this matter of the failure of the county to offer Petery and Boyer the four dollars and a half which they have paid for their alleged title to the C. North tract cannot he considered upon this appeal. But plaintiff apprehends that in view of the fact, that the county is able to refund this money, the decree asked for will not be denied, but modified, if necessary, so that no injustice be done. The rule in equity is that an ability to refund, which can be enforced by a decree, is all that is necessary.

OPINION, MR. JUSTICE WILLIAMS:

The facts found by the master, and concurred in by the court

below, stand like a special verdict. The questions now raised, relate to the legal effect of these facts. It appears that in 1884, Boyer, one of the appellants, was a member of the board of county commissioners of Schuylkill county. In March of that year the commissioners sold at public sale a number of tracts of land, which had been struck down to the county at treasurers' sales in previous years because of the non-payment of taxes. At this sale, Petery, the other appellant, bid upon two lots, which were struck down to him, and he paid his bids, and took a receipt therefor. A few days later, and before the commissioners had executed a deed to him for the lands so purchased, he sold an undivided one half of both lots to Boyer. When the deed to Petery was afterwards executed, Boyer joined with the other members of the board in its execution. In the following December, Petery made and delivered his deed to Boyer for the undivided one half of the lots, in pursuance of the verbal arrangement made soon after the public sale. At the time of his purchase Petery was a good-faith purchaser as the master distinctly finds, having no contract or arrangement with Boyer in regard to his purchases, but buying for himself. The master further finds that the subsequent sale of the one half interest to Boyer did no wrong to the county, and brought no advantage to himself, or to Boyer; and that he occupied no relation of trust or confidence towards the county out of which a duty to account could arise. Upon these facts the master, nevertheless, recommended, and the court below made, a decree declaring the sale to Petery null and void and requiring him to deliver up his deed from the commissioners for both lots, for cancellation. Do the facts found justify the decree made? The master discusses this question by considering three subordinate ones, which he states as follows:

1. Assuming the facts to be found as stated in the bill, is the remedy at law adequate, and should the bill be dismissed as an ejectment bill?

2. Have the present commissioners, or those who filed this bill, sufficient interest to maintain the suit?

3. Was the purchase by Boyer fraudulent in law or fact?

We think he was right in answering the first and second questions as he reported. The remedy of the county against its officer was, upon its own presentment of its case in the bill,

Opinion of the Court.

within the jurisdiction of the equity courts; and the commissioners in office when the bill was filed were the proper parties to move in this, as in any other case in which the county was interested. The third question he answers by saying that Boyer was not guilty of any fraud in fact, but was guilty of fraud in law, because he was a county commissioner when the public sales were made, and could not acquire an interest in land sold by the county before the deeds were executed and delivered to the purchaser. The master holds that such conduct on the part of Boyer is against public policy, and for that reason his purchase from Petery was a fraud in law.

Let us concede, for the sake of the argument, that the premises justify the conclusion reached by the master, that Boyer's purchase was a fraud in law, and that his principal, the county of Schuylkill, can require him to account for his profits, or even to turn over his title, how is Petery involved in the consequences of Boyer's conduct? No fraud, whether in fact or law, is charged to him by the findings of the master. The rule of public policy which affected Boyer does not reach Petery. It is conceded that he was a good-faith purchaser; that he was in no relation of trust towards the county; that his sale of the one half to Boyer did no wrong to the county, and brought no advantage to him; yet the decree adjudges his deeds to be null and void, and orders them to be delivered up for cancellation. The argument seems to be that, because Boyer can take no valid title from Petery to the one half of the lands purchased from him, therefore Petery lost the title to the other, which he bought fairly, and in good faith, from the county. The master states it thus: "This [the voidable character of the deed to Petery] follows, whether any wrong was done or not, and whether Boyer or Petery gained undue advantage or not. The county's demand that the sale shall not stand is sufficient reason for setting it aside. Nor does it help the case any that Petery, at the time of his bid, had no relation of trust that would prevent his acquiring title. He is charged with a knowledge of the law; and, having entered into a contract which brought his rights under the condemnation of the policy of the law, he must suffer the loss." It is fair to assume that the "policy of the law," to which the master here refers, is the rule of policy which he holds excludes a county commissioner

from becoming a purchaser at a public sale for taxes, and from taking title at private sale from one who is not excluded, but who may lawfully buy at such public sale. It is clear that the contract which the master holds has "brought his rights under the condemnation of the policy of the law," is the contract to sell the one half of his valid title to Boyer. The conclusion is thus evident that the master recommended a decree that should take away Petery's title because he sold an interest in his lands to one who could not hold it as against his principal, the county of Schuylkill. Because of Boyer's legal fraud, Petery's title is swept away from him. Because Boyer, being a county commissioner, is held to be a trustee for the county, Petery, who is not a county commissioner, and who holds no relation of trust to the county whatever, is ordered to deliver up his deeds for cancellation. This is a non sequitur. The facts found do not warrant the decree. Whether Boyer must account to the county of Schuylkill, and may be required to convey his undivided one half of the lands in controversy, upon a proper bill filed for that purpose, is not now before us.

The decree is reversed, at the cost of appellee.